**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Actinium Pharmaceuticals, Inc. Securities Litigation | Case No. 1:25-cv-02553-JPO |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES.................................................................................................................. ii

PRELIMINARY STATEMENT....................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

      I.      The Opposition Does Not Identify an Actionable Misstatement. ........................... 2

            A.     Plaintiffs Cannot Change Allegations Through An Opposition................. 2

            B.     Plaintiffs' Puzzle Pleading Is Improper....................................................... 4

            C.     True Statements Are Not Actionable. ........................................................... 4

                  1.     There Is No Allegation That SIERRA Was Designed Without FDA Guidance. ................................................................................. 5

                  2.     FDA Feedback on Other Aspects of the Trial Does Not Obligate the Company to Speak to All Aspects of the Trial. ......................... 5

                  3.     True Statements About SIERRA's OS Results Are Not Actionable. .................................................................................... 6

            D.     The Reform Act's Safe Harbor Applies to the Challenged Statements. ..... 7

            E.     Defendants' Statements Are Not Actionable Under Omnicare................... 8

            F.     Defendants' Corporate Optimism Is Not Actionable. ................................. 9

      II.     The Opposition Shows That the Amended Complaint Does Not Plead a Strong Inference of Scienter.................................................................................... 9

            A.     Plaintiffs Fail to Identify Any Motive for the Alleged Fraud. ................... 9

            B.     Plaintiffs' Allegations Do Not Show Circumstantial Evidence of Conscious Misbehavior or Recklessness. ................................................... 10

CONCLUSION............................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010)......................................................................................8

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021).....................................................................................4

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
658 F. Supp. 3d 220 (S.D.N.Y 2023).......................................................................................7

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................................................4, 5

*In re Canopy Growth Sec. Litig.*,
2024 WL 3445436 (S.D.N.Y. July 17, 2024) .......................................................................11

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) ............................................................................................10

*Christiansen v. Spectrum Pharms., Inc.*,
2024 WL 246020 (S.D.N.Y. Jan. 23, 2024) ...........................................................................5

*In re Delcath Sys., Inc. Sec. Litig.*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014)........................................................................................8

*Diehl v. Omega Protein Corp.*,
339 F. Supp. 3d 153 (S.D.N.Y. 2018)......................................................................................6

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006).....................................................................................10

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)......................................................................................8

*In re Fannie Mae 2008 Sec. Litig.*,
2011 WL 13267340 (S.D.N.Y. Apr. 11, 2011).....................................................................10

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016).....................................................................................10

*Homyk v. ChemoCentryx, Inc.*,
2023 WL 3579440 (N.D. Cal. Feb. 23, 2023) .........................................................................9

*Kalnit v. Eichler,*
   264 F.3d 131 (2d Cir. 2001)..................................................................................................10

*Kleinman v. Elan Corp., plc,*
   706 F.3d 145 (2d Cir. 2013)..............................................................................................6, 7

*Kuriakose v. Fed. Home Loan Mortg. Corp.,*
   897 F. Supp. 2d 168 (S.D.N.Y. 2012)..................................................................................10

*La. Pac. Corp. v. Merrill Lynch & Co.,*
   571 F. App'x 8 (2d Cir. 2014) ...............................................................................................3

*In re Livent, Inc. Noteholders Sec. Litig.,*
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).....................................................................................3

*Long Miao v. Fanhua, Inc.,*
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).....................................................................................4

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.,*
   518 F. Supp. 3d 772 (S.D.N.Y 2021)....................................................................................11

*In re MELA Scis., Inc. Sec. Litig.,*
   2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)........................................................................7

*In re Merrill Lynch Auction Rate Sec. Litig.,*
   851 F. Supp. 2d 512 (S.D.N.Y. 2012).....................................................................................3

*In re MF Glob. Holdings Ltd. Sec. Litig.,*
   982 F. Supp. 2d 277 (S.D.N.Y. 2013)...................................................................................10

*Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.,*
   810 F. App'x 17 (2d Cir. 2020) .........................................................................................2, 3

*In re Philip Morris Int'l Inc. Sec. Litig.,*
   437 F. Supp. 3d 329 (S.D.N.Y. 2020)..................................................................................4, 5

*In re Philip Morris Int'l Inc. Sec. Litig.,*
   89 F.4th 408 (2d Cir. 2023) ...................................................................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
   930 F. Supp. 68 (S.D.N.Y. 1996) ...........................................................................................8

*In re Sanofi Sec. Litig.,*
   155 F. Supp. 3d 386 (S.D.N.Y. 2016)......................................................................................6

*In re Sanofi Sec. Litig.,*
   87 F. Supp. 3d 510, 535 (S.D.N.Y. 2015) ...............................................................................7

*Schaeffer v. Nabriva Therapeutics plc*,
   2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)...........................................................................7

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
   348 F. Supp. 3d 313 (S.D.N.Y. 2018) (Oetken, J.)..................................................................5

*Skiadas v. Acer Therapeutics Inc.*,
   2020 WL 3268495 (S.D.N.Y. June 16, 2020) ........................................................................11

*Sporn v. BrainStorm Cell Therapeutics, Inc.*,
   2025 WL 2643983 (S.D.N.Y. Sept. 15, 2025)...................................................................5, 7, 8

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)....................................................................................................7

*Turner v. MagicJack VocalTec, Ltd.*,
   2014 WL 406917 (S.D.N.Y. Feb. 3, 2014).............................................................................10

*Xie v. Nano Nuclear Energy*,
   2026 WL 63715 (S.D.N.Y. Jan. 8, 2026) ........................................................................ 11f77

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
   2024 WL 451691 (S.D.N.Y. Feb. 5, 2024)...........................................................................6, 7

**Rules**

Fed. R. Civ. P. §9 (b) ...............................................................................................................11

Fed. R. Civ. P. § 12(b)(6).........................................................................................................11

**PRELIMINARY STATEMENT**

The Amended Complaint presented a straightforward theory of securities fraud liability: that the FDA unequivocally told Actinium at a June 2020 meeting that the SIERRA trial was defectively designed and could not support an approval application for Iomab-B (the Company's promising leukemia treatment), and that Actinium failed to disclose the FDA's definitive position to the Company's investors.[1]  Defendants demonstrated in their Moving Brief that the Amended Complaint did not provide the Court with the full text of the Additional Clinical Comment, and that the sentence Plaintiffs omitted showed that the FDA expressly agreed that the SIERRA trial supported by historical data could support an approval application.

With the Amended Complaint gutted by a full and fair presentation of the Additional Clinical Comment, Plaintiffs now advance three inconsistent theories of liability.  *First*, they argue Actinium lacked sufficient historical data to supplement SIERRA.  *Second*, they claim Defendants concealed that the FDA might later require an additional clinical trial.  *Third*, they contend Defendants represented that SIERRA alone would support approval.  These shifting theories cannot salvage Plaintiffs' pleading.

The Court should reject these theories because they do not appear in the Amended Complaint.  Even if they did, the Court should dismiss this action because the Amended Complaint does not contain factual allegations (particularized or otherwise) that:  (i) show the historical data Actinium developed or could have developed prior to a BLA submission; (ii) explain why Actinium should have expected the FDA's "SIERRA plus historical data" comment to later morph into "a new Phase 3 trial is required"; or (iii) demonstrate that Actinium ever represented that SIERRA alone would be sufficient to win FDA approval for Iomab-B.

---

[1]    Capitalized terms have the same meaning as in Defendants' moving brief, ECF No. 45.

1

The Opposition's attempts to evade the prohibition on puzzle pleading, the Reform Act's safe harbor, the *Omnicare* rule on opinion liability, the puffery doctrine, and settled Second Circuit law on scienter all fail in light of the full text of the Additional Clinical Comment and settled law.

**ARGUMENT**

**I.    THE OPPOSITION DOES NOT IDENTIFY AN ACTIONABLE MISSTATEMENT.**

**A.    Plaintiffs Cannot Change Allegations Through An Opposition.**

The Amended Complaint repeatedly alleged that Defendants committed securities fraud by failing to disclose that the FDA told Actinium in June 2020 that the Company would "need to conduct further clinical trials to obtain approval." ¶ 6; *see also id.* ¶¶ 50, 72, 95, 99, 103, 108, 112, 116, 120, 124, 128, 138, 142, 146, 150, 154. Defendants provided the June 2020 Minutes, which show that the Company was not told that an additional clinical trial would be necessary but rather that additional data, which could include historical data, would be required to show efficacy. Mov. Br. 1–2.[2]

In response, the Opposition advances three different (and inconsistent) theories: (1) the FDA told Actinium that SIERRA alone was not sufficient and that additional or historical data would be needed, Opp. 4, 16; (2) the FDA told Actinium that it would require historical data **and** a new clinical trial, Opp. 17–18, 18–19, 22; and (3) Actinium was told in June 2020 that a new clinical trial would be required. Opp. 1, 2, 5, 8, 15. Each theory fails.

*First*, Plaintiffs cannot amend their Amended Complaint through their Opposition. *Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F. App'x 17, 20 (2d Cir. 2020) ("[A]

---

[2]    Plaintiffs argue that they should not be held responsible for failing to provide the Court with a complete and accurate version of the Additional Clinical Comment because "Plaintiffs did not have the full meeting minutes" and instead "merely quote[d] CW1's accurate account of the Additional Clinical Comment." Opp. 7 n.6. It is not credible that CW1 had a practice of reading and memorizing the minutes from all Actinium's meetings with the FDA, relayed a complete verbatim recitation of the first half of the Additional Clinical Comment to Plaintiffs, but forgot to mention the very next sentence.

complaint may not be amended by advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint."); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001) ("The complaint cannot, of course, be amended by the briefs in opposition to a motion to dismiss."). Plaintiffs now concede that the FDA, through the Additional Clinical Comment, informed Actinium that SIERRA plus historical data could be sufficient for approval, but argue that the FDA's statement "has absolutely no impact on the massive risk that Defendants concealed from investors" – that the FDA might require a new clinical trial. Opp. 7–8. This theory is not advanced in the Amended Complaint (which never mentions historical data).

*Second*, Plaintiffs assert that Actinium misled investors because the Company submitted "copious historical data" in response to the Additional Clinical Comment and still did not win FDA approval for Iomab-B. *Id.* at 8. This theory is nonsense. The SIERRA trial was still being enrolled in June 2020 and the Company's BLA submission was years in the future. Actinium never once suggested that the Iomab-B data described in the June 2020 Minutes represented the entirety of the historical data the Company intended to submit with its BLA.

Third, Plaintiffs argue that subsequent unidentified correspondence in 2020 and 2023 confirmed that an additional clinical trial was necessary. *Id.* at 8. Plaintiffs' allegations about the alleged 2020 and 2023 correspondence, however, do not include "the who, what, when, where and why of each statement alleged to be fraudulent" mandated by the Reform Act. *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 533 (S.D.N.Y. 2012), *aff'd sub nom.*, *La. Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014). In addition, the only allegations in the Amended Complaint concerning a second 2020 meeting and a 2023 meeting are based on allegations from CWs who were not present at the meetings. AC ¶¶ 64, 71–74. CW1 (who did

not join Actinium until 2022) alleges that in July 2020 the "FDA reiterated that [] an additional trial would be needed for approval of Iomab-B." *Id.* ¶ 64. Because the June 2020 Minutes, read in full, do not say that an additional clinical trial would be needed, this "reiteration" makes no sense. CW1 also purports to know what the FDA told Actinium during a 2023 meeting that CW1 did not attend, despite admitting that he or she was only "generally aware of the clinical pre-BLA" meeting,[3] and that after the clinical pre-BLA meeting, "everything at the Company became very 'hush-hush.'" *Id.* ¶¶ 71–72. There is no reason to believe that CW1 "would possess the information alleged." *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797–98 (S.D.N.Y. 2020).

### B.    Plaintiffs' Puzzle Pleading Is Improper.

The Opposition argues that Plaintiffs do not rely on impermissible puzzle pleading tactics because they "highlight[] the specific portion alleged to be misleading" and include "a specific explanation as to why the statement is false or misleading." Opp. 9. The Opposition's "specific explanation," however, is the exact same two paragraphs repeated nearly verbatim sixteen times. Mov. Br. 17. This is insufficient under settled law. *See Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 477–78 (S.D.N.Y. 2021).

### C.    True Statements Are Not Actionable.

Defendants' accurate statements concerning SIERRA's trial design, FDA feedback on their CMC package, and SIERRA's OS data, are not actionable. "It is 'well settled that a complaint alleging violations of the securities laws may not rely upon statements that are true.'" *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 349 (S.D.N.Y. 2020) (quoting *In re Bristol-Myers*

---

[3]    Further demonstrating CW1's lack of knowledge, Actinium did not have a clinical pre-BLA meeting with the FDA in 2023. *See* Regan Decl. Ex. B (2023 10-K) at 3 (Actinium submitted a meeting request for a clinical pre-BLA meeting to be held in 2024).

4

*Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 557 (S.D.N.Y. 2004)), *aff'd sub nom.*, *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408 (2d Cir. 2023).

### 1.    There Is No Allegation That SIERRA Was Designed Without FDA Guidance.

The Opposition argues that Defendants' comments concerning FDA involvement in the design of SIERRA were misleading because they gave the impression that "Sierra was designed or endorsed by the FDA, and/or conformed to express guidance from the FDA." Opp. 10–11. But the Amended Complaint does not allege any facts showing that SIERRA was designed without guidance from the FDA. Plaintiffs inappropriately attempt to shoehorn Defendants' statements about SIERRA being initially "designed" with FDA input, *e.g.*, AC ¶¶ 126, 136, 144, into caselaw concerning statements that a trial was currently being "well-run" and "aligned with FDA" views. *See Sporn v. BrainStorm Cell Therapeutics, Inc.*, 2025 WL 2643983, at *7 (S.D.N.Y. Sept. 15, 2025); *Christiansen v. Spectrum Pharms., Inc.*, 2024 WL 246020, at *7–8 (S.D.N.Y. Jan. 23, 2024). *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313 (S.D.N.Y. 2018) (Oetken, J.) has no bearing on this case because the issuer there claimed its application included all three FDA-suggested categories of studies, but the application actually included only one such category. *Id.* at 324.

### 2.    FDA Feedback on Other Aspects of the Trial Does Not Obligate the Company to Speak to All Aspects of the Trial.

The Opposition also attempts to conflate Iomab-B's Chemistry, Manufacturing and Controls ("CMC") package with the clinical BLA process. Opp. 12. Plaintiffs admit that Defendants' statements "[w]ere literally true concerning the FDA's feedback on the CMC package . . . ," but argue that they were misleading when made "in the context of describing FDA feedback during BLA-related meetings." *Id.* at 12–13. By commenting on the CMC package, however, Actinium did not take on an obligation to discuss every aspect of the Company's planned

BLA filing.  "[T]he critical consideration . . . is whether 'the alleged omissions . . . are sufficiently connected to [the] existing disclosures to make those public statements misleading.'"  *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 165–66 (S.D.N.Y. 2018) (quoting *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016)).  Plaintiffs' reliance on *In re Y-mAbs Therapeutics, Inc. Securities Litigation*, 2024 WL 451691 (S.D.N.Y. Feb. 5, 2024), is misplaced.  In *Y-mAbs*, the court found that the defendants' statements such as "all the information that we need, we have" and that FDA concerns were not "holding up the submission of the BLA" were actionable in light of contradicting statements by the FDA that the company had provided "insufficient information" and that the FDA's concerns "would be a filing issue."  *Id.* at \*11.  Unlike this case, the defendants' comments in *Y-mAbs* were on the exact same topics as the FDA feedback.

### 3.    True Statements About SIERRA's OS Results Are Not Actionable.

Plaintiffs' Opposition asserts that Defendants' accurate statements about SIERRA's OS results were misleading because "they falsely implied that SIERRA showed a statistically meaningful survival benefit that could support a BLA, when in truth the OS data was confounded and could not support a BLA."  Opp. 20.  This argument fails for four reasons.

*First*, OS was a secondary endpoint, not a primary endpoint.  The FDA has approved several BLA applications where a drug has failed its secondary endpoint.  *See* Mov. Br. 12 n.17.  Plaintiffs' argument hinges on the untrue, illogical assumption that Defendants knew that SIERRA would be required to meet its secondary endpoints to secure approval.  Opp. 20 ("In reality, Defendants knew that the FDA would require sound OS data for BLA approval, which Sierra could not produce.").  *Second*, Defendants accurately disclosed that SIERRA had not met its secondary OS endpoint.  Mov. Br. 17; *see also Kleinman v. Elan Corp., plc*, 706 F.3d 145, 155 (2d Cir. 2013) (rejecting securities fraud premised on a "press release [that] accurately disclosed that the only

6

positive results from the entirety of the Phase 2 study stemmed from the use of post-hoc analysis"). *Third*, while Plaintiffs repeatedly claim that Defendants knew SIERRA was flawed, the June 2020 Minutes make no mention of SIERRA's crossover design being problematic for OS data. *Finally*, to the extent Plaintiffs take issue with Defendants' opinions as to the value of the OS data, Defendants' statements are protected opinions. Mov. Br. 12; *see also In re MELA Scis., Inc. Sec. Litig.*, 2012 WL 4466604, at \*13 (S.D.N.Y. Sept. 19, 2012).

### D. The Reform Act's Safe Harbor Applies to the Challenged Statements.

In response to the Moving Brief's safe harbor arguments, Plaintiffs' Opposition claims that there are no challenged forward-looking statements, rather the statements are misleading for the "omission of those highly material, *historical* FDA interactions that rendered the statements misleading." Opp. 14.

Plaintiffs' argument mischaracterizes the challenged statements, which concern the Company's plan to request a meeting with the FDA to discuss their upcoming BLA, that the Company "intend[s] to file" for a BLA, and were "working towards completing and submitting" the BLA. *Id.* at 13 & n.10. "[C]ourts in this District have consistently held that 'statements about FDA approval' . . . 'are classically forward-looking' because 'they address what defendants expect to occur in the future.'" *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 237 (S.D.N.Y 2023) (quoting *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 535 (S.D.N.Y. 2015), *aff'd sub nom.*, *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016)); *see also Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at \*10 (S.D.N.Y. Apr. 28, 2020).

The statements found actionable in *Y-mAbs* and *Brainstorm* involved concerned the outcome of FDA meetings. For example, in *Brainstorm*, defendants stated that "the FDA confirmed that the full results of Phase 3 trial is collecting relevant data critical to the assessment of NurOwn's efficacy" and that "[i]t's an important confirmation for us . . . [w]e obviously were

very reassured by their position." *Brainstorm*, 2025 WL 2643983, at *7.  There are no similar statements at issue here.

Plaintiffs further argue that Actinium's comments concerning topline data are not protected under the Reform Act's safe harbor because (a) Defendants knew the statements were materially false or misleading, and (b) Defendants' cautionary language was insufficient.  Opp. 17–19. Plaintiffs fail to include any particularized allegations that Defendants knew the statements were materially false or misleading.  As the Opposition selectively acknowledges, the FDA told Actinium that SIERRA plus historical data could support a BLA.  *Id.* at 4, 16.  The challenged statements are that SIERRA will, if successful, **<u>support</u>** a BLA.  Plaintiffs do not and cannot allege this is false in light of the Additional Clinical Comment.

Defendants' cautionary statements adequately disclosed the risk that the FDA may ultimately reject the Company's BLA.  *See*, *e.g.*, *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 333–34 (S.D.N.Y. 2014).  Plaintiffs' cautionary language case citations are irrelevant as they involve risks that have already occurred.  *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (cautionary language regarding risk of decline in aircraft value when company knew with certainty that value would decline); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (cautionary language about negative impact of increased mobile usage on revenue when it had already impacted revenue); *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 532 (S.D.N.Y. 2010) (cautionary language disclosed "'remote' credit risk" when company knew of large magnitude risks).

### E. Defendants' Statements Are Not Actionable Under *Omnicare*.

Having been caught misrepresenting the contents of the Additional Clinical Comment, Plaintiffs concede that "it was theoretically possible that Actinium could have used Sierra's results to support a BLA along with hypothetical additional data pursuant to a hypothetical prospective

plan" and pivot to a new argument: that statements about the significance of SIERRA's results are misleading because they "concealed that Defendants were taking a massive risk in disregarding the FDA's warnings by pursuing the BLA without an additional clinical trial." Opp. at 15.

This argument fails. *First*, it abandons the Amended Complaint's theory of securities fraud and impermissibly re-writes Plaintiffs' allegations. *See* Section I.B., *supra*, at 2–4. *Second*, the June 2020 minutes did not require Actinium to conduct an additional clinical trial; they simply told the Company that additional data, such as historical data, would be needed. Mov. Br. at 1–2, 16; Regan Decl. Ex. A (June 2020 Minutes) at 7. Plaintiffs' reliance on *Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *9 (N.D. Cal. Feb. 23, 2023), is misplaced. In *Homyk*, a California court found that defendants' statements, including that there was "compelling evidence" that "supported [the drug's] superior profile of therapy verses glucocorticoid standard of care," were materially misleading given FDA feedback that the proposed trial design was "likely not adequate to support such safety comparisons." *Id*. at *8. The Amended Complaint here does not point to statements directly contradicted by FDA feedback.

### F.    Defendants' Corporate Optimism Is Not Actionable.

Plaintiffs assert that Defendants' statements, including that SIERRA was "pristine," are not puffery. In support, Plaintiffs make up their own definition of pristine: that it "implies that the study design was 100% aligned with the FDA's guidance." Opp. 21. That Plaintiffs needed to supply their own definition of "pristine" confirms that Defendants' statements are puffery.

### II.    THE OPPOSITION SHOWS THAT THE AMENDED COMPLAINT DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER.

### A.    Plaintiffs Fail to Identify Any Motive for the Alleged Fraud.

Plaintiffs argue they alleged a motive for the alleged fraud because Defendants wanted to maintain Actinium's stock price and keep their jobs and salaries. *Id.* at 26–27. Courts regularly

9

reject these exact arguments. *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (collecting cases); *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012) (defendants' desire to have company remain solvent was "ubiquitous in business" and "too generalized"), *aff'd sub nom.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).

Plaintiffs gloss over the complete absence of insider stock sales, but courts regularly recognize that the "fact that neither [defendants] sold stock during the putative class period undermines plaintiffs' motive allegations against defendants." *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006); *see also*, *e.g.*, *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 n.32 (S.D.N.Y. 2016); *Turner v. MagicJack VocalTec, Ltd.*, 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2014). Without stock sales, a Plaintiff must instead show strong circumstantial evidence of conscious misbehavior or recklessness. *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013); *In re Fannie Mae 2008 Sec. Litig.*, 2011 WL 13267340, at *3 (S.D.N.Y. Apr. 11, 2011). Plaintiffs fail to meet that burden here.

### B. Plaintiffs' Allegations Do Not Show Circumstantial Evidence of Conscious Misbehavior or Recklessness.

The Opposition asserts that Defendants "all but ignore the Complaint's core theory of scienter" that "Defendants knew about the Additional Clinical Comment and later FDA comments confirming that additional data and clinical study was necessary for the BLA, materially contradicting their public statements." Opp. 22.

Defendants do not dispute that they knew about the Additional Clinical Comment – the dispute in this case is over the importance of the comment when not misleadingly quoted. Defendants understood from the full Additional Clinical Comment that data from the SIERRA trial, along with historical data, could form a successful BLA. None of Defendants' challenged

10

statements is to the contrary.  This is unlike in *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495 (S.D.N.Y. June 16, 2020), where the defendants' statements that the "FDA agreed" that "additional clinical development is not needed" for the company to submit an NDA, were found to support scienter when in fact the FDA had "noted that [the company] would need to conduct a well-designed clinical trial before it would consider approving [the drug]." *Id.* at *8–10.

Plaintiffs' CW allegations fare no better.  None of the CWs can support scienter because none of the individuals were employed at the time of the June 2020 Minutes, and therefore none of them can "describe the nature of the CW's contact with the individual defendants that would be probative of defendants' mental state.'" *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780 (S.D.N.Y 2021); *see also Xie v. Nano Nuclear Energy*, 2026 WL 63715, at *8 (S.D.N.Y. Jan. 8, 2026) (dismissing case for lack of scienter where confidential witness alleged regulatory approval timeline was unrealistic because "[c]ourts discount [CW] allegations where the complaint fails to establish the witnesses' basis of knowledge for the pleadings attributed to them") (quoting *In re Canopy Growth Sec. Litig.*, 2024 WL 3445436, at *13 (S.D.N.Y. July 17, 2024)).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice pursuant to the Reform Act, Rule 9(b) and Rule 12(b)(6).

11

Dated: February 2, 2026                                   **HOGAN LOVELLS US LLP**


                                                          */s/ Allison M. Wuertz*
                                                          William M. Regan
                                                          Allison M. Wuertz
                                                          Jacey L. Gottlieb
                                                          Elizabeth B. Cochrane
                                                          390 Madison Avenue
                                                          New York, New York 10017
                                                          Tel: (212) 918-3000
                                                          Fax: (212) 918-3100
                                                          william.regan@hoganlovells.com
                                                          allison.wuertz@hoganlovells.com
                                                          jacey.gottlieb@hoganlovells.com
                                                          elizabeth.cochrane@hoganlovells.com

                                                          *Attorneys for Defendants*

## WORD COUNT CERTIFICATION

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York.  This certificate certifies that the document complies with the word count limit.  Compliance relied on the word count of the word-processing system used to prepare the document.  The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities, and signature block is 3,498 words.


Dated:    February 2, 2026
          New York, New York

                                        */s/ Allison M. Wuertz*
                                        Allison M. Wuertz

13